IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERARDO BECERRIL,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | **NO. 08-1042** |
| | : | |
| **MICHAEL MANCINI, et al.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                   **December 16, 2008**

Becerril has brought this § 1983 case, alleging violations of his first and fourth amendment rights. On September 3, 2008, he filed an amended complaint that includes three counts against defendants city of Allentown, and police officers Mancini and Karnish.

Defendants have filed a second motion to dismiss[1] arguing that (1) Count III of Becerril's amended complaint fails to state a claim against Allentown and (2) (if Count III is not dismissed) the "official capacity" claims against Mancini and Karnish should be dismissed as redundant of Becerril's claims against Allentown.

Based on the following discussion, I will grant the motion with respect to Count

---

[1] On August 14, 2008, I denied, without prejudice, defendants' motion to dismiss Becerril's claims against Mancini and Karnish in their official capacities. I granted defendants' motion to dismiss Becerril's municipal liability claim, dismissing Count III of the complaint without prejudice. I granted Becerril twenty (20) days to file an amended complaint that included "specific facts supporting (1) a specific policy or custom; (2) a direct causal [link] between that policy or custom and the harm alleged; and (3) the City of Allentown's deliberate indifference regarding failure to train police officers."

III's municipal claim against the City of Allentown.

I.   **BACKGROUND**[2]

On March 1, 2006, Becerril was talking on his cell phone near the intersection of Fifth and Turner Streets in Allentown. Officer Mancini stopped Becerril, searched him, and released him. Officer Mancini later observed Mr. Becerril enter a residential building at 212 N. Sixth Street after a building resident gave Mr. Becerril permission to enter. A building maintenance employee then let Officers Mancini and Karnish into the building through the front door. Inside, the officers confronted Mr. Becerril and arrested him for trespassing. They searched him (incident to his arrest) and allegedly discovered a metal spoon and a glass pipe.[3]

Becerril's suit for alleged violations of 42 U.S.C. § 1983 consists of three counts. Counts I and II of the amended complaint assert causes of action under the first and fourth amendments against Mancini and Karnish, individually and in their official capacities. Count III asserts a claim of municipal liability against Allentown. Defendants have moved to dismiss (again) plaintiff's claim against Allentown for failure to allege a predicate policy, custom or practice under Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), and his claims against Mancini and Karnish in their official

---

[2] The following background facts are derived from Becerril's complaint.

[3] The honorable William E. Ford of the Lehigh County Court of Common Pleas found that the arrest for trespassing was not supported by probable cause, and that the search incident to arrest was unreasonable and improper under the fourth amendment.

capacities as redundant of the claims against Allentown. Defendants have not challenged plaintiff's claims against Mancini and Karnish in their individual capacities.

## II. STANDARD FOR A MOTION TO DISMISS

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The rule is designed to screen out cases in which the "complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-12 (3d Cir. 1999). A complaint should not be dismissed on a 12(b)(6) motion if the claim is adequately stated and if the factual allegations raise a right to relief "above the speculative level." Bell Atlantic Corp. V. Twombly, 127 S. Ct. 1955, 1965 (2007). "A well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)) (internal quotations omitted). However, "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." Id.

When considering a motion to dismiss, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Courts look only to the

facts alleged in the complaint and not to matters extraneous to the pleadings in deciding a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Under Fed. R. Civ. P. 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must provide to defendant "fair notice of what the . . .claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1964 (2007); see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

Establishing that no possible claim has been presented is the defendants' burden at this stage. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). Courts, however, will not accept as true "bald assertions" or "vague and conclusory allegations." See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

**III. DISCUSSION**

A.     City of Allentown: *Monell* Claim

Defendants argue that plaintiff's claim against Allentown must be dismissed under Monell. See 436 U.S. at 694. A municipality can only be liable under § 1983 if the alleged injury is permitted under a specific policy or custom. Id. To state a § 1983 claim against a municipality, plaintiff must: (1) identify a policy or custom that deprived him of a federally protected right, (2) demonstrate that the municipality, by its deliberate

conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997). This threshold to municipal liability may be proved with evidence of knowledge and acquiescence by the relevant municipal entity. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Another avenue of proof is to present a "failure to train" case, where liability attaches if the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).

In his amended complaint, Becerril alleges the following in support of Count III:

(1) "[A]s reflected in the actions taken against Mr. Becerril, it was the policy, practice and/or custom of the City of Allentown to carry out unreasonable searches and seizures against people within the City." (Compl. ¶ 51.)
(2) "[T]he City of Allentown developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the constitutional rights of persons within the City, which caused the violation of Plaintiff's rights." (Id. ¶ 52.)
(3) "[I]t was the policy and/or custom of City of Allentown to inadequately and improperly investigate citizen complaints of constitutional violations by City officials, and such violations were instead tolerated by the City." (Id. ¶ 53.)
(4) "[I]t was the policy, practice and/or custom of City of Allentown to inadequately supervise and train its officials" and "the City did not require appropriate in-service training or re-training of officials who were known to have engaged in civil rights violations." (Id. ¶¶ 54-55.)
(5) "[A]s a result of the policies, practices and/or customs of the City, . . . City officials . . . believed that their unconstitutional and unlawful actions would not be investigated or censured, but would be tolerated and even rewarded" and "the City's policies, practices and custom . . . were the cause of the violations of Plaintiff's rights." (Id. ¶¶ 63-64.)
(6) "Repeatedly, people have filed complaints with the City and in Court, complaining about civil rights violations, including Fourth Amendment

              violations, by City officers and members of the Police Department administration . . . [implicating] high ranking officials within the Department, including Assistant Chief Manescu"(Id. ¶¶ 56-57.)

(7)   "[R]ather than face meaningful punishment, [the high ranking officials] have been given promotions, sending the clear message to rank and file officers that police tactics that cross the line will be rewarded. Another high ranking officer - a Sergeant - reached that rank after being named in approximately twenty-three (23) internal complaints and being sued eleven (11) times in approximately seven (7) years."  (Id. ¶¶ 57-58.)

(8)   "Even when information obtained during the hiring process, supervisor observations, and the number of complaints against officers warranted close supervision of officers, instead the police administration looked the other way." (Id. ¶ 58.)

(9)   "Officers who have reported constitutional violations by other officers have suffered negative consequences within the department, leading to a fear among officers to speak out and the fostering of a culture that allows misconduct to continue." (Id. ¶ 59.)

(10)   "By allowing the Code of Silence to persist, the City created a custom in which Fourth Amendment violations were tolerated rather than punished. Indeed, the City's highest ranking police officials affirmatively fostered the code of silence by taking adverse employment action against those officers who reported misconduct. . . .Allentown denied promotion to certain members of the Police Department because the officers had spoken out about misconduct within the ranks.  In that case, as the Court of Appeals noted, Members of the Police Administration admitted that they rated an officer low because of his actions as President of the FOP when he alleged wrongdoing by a police captain.  Likewise, Manescu, who is now Assistant Chief, testified that he rated an officer low 'because he got a fellow officer in trouble by reporting that the officer struck a suspect on the head with a flashlight.'" (Id. ¶¶ 60, 62.)

      The supplemental information supplied in paragraphs seven to ten, above, was not supplied in the original complaint.  Even with this new information, however, the Monell allegations are not sufficiently specific or relevant.  If the newly-alleged information is true and could be proven, it is not evidence that would establish a municipal custom of allowing or encouraging police officers to make illegal arrests for trespassing.  Nor is it

evidence that would amount to deliberate indifference on the part of Allentown. These facts do not demonstrate a pattern of underlying constitutional violations that should have alerted Allentown to an inadequate training program with respect to fourth amendment seizures.

Becerril alleges in the additional paragraphs above that there is a general failure to report wrongdoing in Allentown's police department. It is possible that if this issue had been addressed, officers may have been less likely to violate Becerril's fourth amendment right not to be seized without probable cause. However, the question is not what Allentown could have done that would have (or may have) prevented harm to Becerril, but what Allentown *did* do. Even assuming all of plaintiff's new allegations are true, what Allentown did does not appear to rise to the level of deliberate indifference.

This case is distinguishable from those in which municipal customs were properly pled. For example, in Bielevicz v. Dubinon, 915 F.2d 845 (3d Cir. 1990), the court found that Pittsburgh's custom of allowing police officers to make illegal arrests for intoxication was a violation of section 1983. In that case, the plaintiffs established a municipal custom with respect to illegal arrests for intoxication and coupled that custom with causation. They showed that policymakers were aware of similar unlawful conduct related to intoxication arrests in the past and failed to take precautions against future violations. Additionally, the plaintiffs showed that this failure, at least in part, led to their injury. Id. at 851.

The key factor distinguishing this case from <u>Bielevicz</u> is that Becerril has not alleged that Allentown was aware of "similar unlawful conduct."  There may have been successful civil suits regarding constitutional rights in the preceding decade, but that does not mean these suits or scandals involved the same officers, events, types of arrests, or constitutional provisions.  Indeed, Becerril does not even allege so.

Plaintiffs do not succeed in stating a cause of action under § 1983 when they simply recite the elements of a <u>Monell</u> claim, with no facts specific to the purported policy or custom of the Allentown police department with respect to searches and seizures.  <u>See, e.g.</u>, <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. at 403-04 (limiting municipal liability to identifiable policies in order to ensure that municipalities are only liable for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality"); <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>").  Although the amended complaint contains some facts and additional details, they are not sufficiently specific to the purported policy or custom of the Allentown police department *with respect to searches and seizures* or to the individuals involved in this case.

Under similar circumstances in <u>Torres v. City of Allentown</u>, 07-1934, 2008 U.S. Dist. Lexis 50522, at *12-14 (E.D. Pa. Jun. 30, 2008), I concluded that without "specific factual allegations referencing the conduct, time, place, and persons responsible for any

official municipal policy or custom endorsing the police officers' conduct," plaintiff's complaint failed to state a § 1983 claim against Allentown. I reach the same conclusion here. While the supplemental information provided in Becerril's amended complaint provides the names of some police department individuals allegedly involved in unconstitutional practices or policies and lawsuits filed by other people grieved by various constitutional infirmities, these general and varied allegations lack the requisite specificity that §1983 and Rule 12(b)(6) require.

B.     Officers Mancini and Karnish

The dismissal of the claims against Allentown renders moot defendants' argument that plaintiff's claims against Mancini and Karnish in their official capacities are "redundant." Therefore defendants' motion with respect to Counts I and II against the individual defendants in their official capacity are denied.

IV.  **CONCLUSION**

Based on the foregoing, I will grant defendants' motion as to the municipal liability claim against the City of Allentown, dismissing Count III with prejudice. Defendants' request that I dismiss plaintiff's claims against Michael Mancini and Matt Karnish in their official capacities is denied without prejudice. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERARDO BECERRIL,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 08-1042 |
| | : | |
| **MICHAEL MANCINI, et al.,** | : | |
| Defendants | : | |

**O R D E R**

**STENGEL, J.**

**AND NOW**, this 16th day of December, 2008, upon consideration of defendants' Motion to Dismiss (Document # 23), and plaintiff's response thereto (Document #25), it is hereby **ORDERED** that the motion is **GRANTED, in part, and DENIED, in part** as follows:

(1) Defendants' motion to dismiss Count III is **GRANTED**, and Count III is **DISMISSED WITH PREJUDICE**.

(2) Defendants' motion to dismiss Counts I and II, as against Officers Mancini and Karnish in their official capacities, is **DENIED WITHOUT PREJUDICE**.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.

10